UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Danville Division

---

LOJE WITCHER, on behalf of herself
and all others similarly situated,

        Plaintiff,

v.                                  Case No. 4:24-cv-00028-TTC-CKM

PERFORMANCE LIVESTOCK & FEED
COMPANY, LLC, and PURINA ANIMAL
NUTRITION, LLC,

        Defendant.

---

### MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO APPROVE SETTLEMENT

---

Plaintiff Loje Witcher ("Plaintiff") respectfully submit this memorandum in support of his Motion for Settlement Approval. The Motion is unopposed by Defendant Performance Livestock & Feed Company, LLC ("Defendant PLF"), and Defendant Purina Animal Nutrition, LLC ("Defendant PAN"). Subject to Court Approval, the parties have resolved this wage and hour action for a maximum total amount of $63,574.94. The settlement satisfies all criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it is a fair and reasonable resolution of a bona fide dispute and was the result of arm's-length settlement negotiations conducted by counsel well-versed in wage and hour law. The parties have structured the settlement agreement and settlement process as an opt-in settlement as they believe that to be the most efficient vehicle for a speedy and efficient resolution of this matter.

**PROCEDURAL BACKGROUND AND SETTLEMENT NEGOTIATIONS**

27312\0014\12610006v2

I.  **Factual Allegations**

Defendant PLF operates animal-feed plants in Martinsville, Virginia and Lawsonville, North Carolina. PLF employs persons who are "non-exempt" and required to be paid overtime for weeks in which they work more than 40 hours. This action involved Defendants' alleged violative practices in compensating these nonexempt employees for overtime. Specifically, Plaintiff alleges that Defendants failed to include certain non-discretionary bonuses and incentive compensation in the calculation of nonexempt employees' overtime rates. Plaintiff alleges that the above practices violated the Fair Labor Standards Act 29 U.S.C. § 201, *et seq.* (the "FLSA") and the Virginia Overtime Wage Act ("VOWA") Va. Code § 40.1-29.2.

Plaintiff alleges that PLF and PAN market themselves as a "joint venture company" and that both are responsible as alleged "joint employers." Defendants deny these allegations and affirmatively represent that PLF is the employer of the non-exempt employees who work at the Martinsville and Lawsonville facilities and, accordingly, that PLF will be making the payments to resolve this Action.

With respect to the claims, the gravamen of the issue is that PLF agreed to pay attendance, performance, and work completion bonuses of $100 per week, conditioned on meeting attendance, performance, and/or work completion targets. Plaintiff alleges that during the relevant time period, PLF failed to include this extra compensation in the calculation of employees' overtime rates. The settlement agreement resolves this issue.

II.  **Overview of Litigation and Settlement Negotiations**

Named Plaintiff Loje Witcher initiated this lawsuit on or about July 23, 2024. The parties agreed to a series of stays to promote settlement discussions. During this period, PLF produced time and pay data requested by Plaintiff, which Plaintiff used to develop and revised a damages model. The parties subsequently engaged in settlement negotiations over several weeks,

2

culminating in the executed settlement agreement which is now presented to the Court for approval.

Under the terms of the settlement agreement, each eligible individual will have an opportunity to join the settlement and accept their individualized allocation in exchange for a properly tailored release. The total maximum potential value of the settlement is $63,574.94 (inclusive of any service award, attorneys' fees and costs and costs, and settlement administration) and the maximum number of potential participants is 116.

**SUMMARY OF THE SETTLEMENT TERMS**

1. **The Gross Settlement Fund**

Defendant has agreed to pay a maximum $63,574.94 to settle the claims in this Action, which shall be used to provide for: (i) Gross settlement payments to eligible current and former employees who wish to join the settlement up to a total aggregate amount of $27,574.94 in the event that all eligible individuals join the settlement ("Net Settlement Fund"), (ii) a Service Award to the Named Plaintiff in the amount of $1,000.00; (iii) Plaintiff's Attorneys' Fees and Costs of $25,000; (iv) Settlement administration costs of up to $10,000.00. Finally, the settlement states that the employer's share of applicable employment taxes associated with settlement payments to participants will be paid directly by PLF to the class administrator.

2. **Eligible Employees**

The parties have agreed and confirmed that there are 116 former and current employees eligible to participate in the settlement. For these individuals, Plaintiffs' counsel has determined unique estimated allocations for each of them using a *pro rata* calculation based off of each individual's maximum damages based on actual time and pay data and Plaintiff's theory of liability in this case. The formula used provides for settlement awards equal to 100% of alleged FLSA damages as calculated by Plaintiff's counsel plus, for individuals who worked during the period a

3

prior Virginia state overtime law was in effect (July 1, 2021 to June 30, 2022), a proportionate amount of additional alleged overtime damages representing a compromise on the parties' dispute as to whether the prior Virginia overtime law provided for the same, or higher, overtime wages as compared to the FLSA. The estimated average (post service award, attorneys' fees and costs, and settlement administration costs) *pro rata* settlement allocation for the Net Settlement Fund claim is $237.72.

3. **Settlement Notice and Check Distribution Process**

All mailings of the settlement notices[1] and agreement and release forms will be mailed by RG/2 Claims Administration LLC[2] (the "Settlement Administrator") according to the timeline set out in the Settlement Agreement. The Settlement Administrator will also be responsible for establishing the Qualified Settlement Fund ("QSF") into which PLF will deposit the applicable settlement amounts and from which all settlement payments will be made. Once the settlement is approved, the Settlement Administrator will be responsible for disbursing payments to Plaintiff and all those who elect to participate in the settlement. The Settlement Administrator will also be responsible for disbursing payment for attorneys' fees and costs to Plaintiffs' counsel. Finally, the Settlement Administrator will be responsible for sending each eligible individual a copy of their individualized release and a notice detailing the claims at issue and the settlement of same. Potential plaintiffs wishing to participate in the settlement will execute their releases and return them to the Settlement Administrator. After the close of the notice period, PLF will fund the QSF in the amount necessary to satisfy the claims of those who elect to join in the settlement. The Settlement Administrator will then send out settlement checks to those individuals who choose to

---

[1] A copy of the settlement notices explaining the settlement and how to join are appended to the Settlement Agreement.

[2] RG/2 Claims Administration LLC was selected by Defendants to administer the settlement.

participate in the settlement. Any settlement allocations associated with individuals who elect not to participate in the settlement will not be funded into the QSF and will thus not be disbursed.

4. **Release**

Only individuals who affirmatively elect to participate in the settlement will release any claims. The release at issue is properly tailored to only release the overtime claims specifically at issue in this action. Any individual who chooses not to sign their release will not be a party to the settlement and will not release any claims.

5. **Individual Settlement Amounts**

As explained herein, each eligible individual has been allocated a proportionate share of the Net Settlement Fund pursuant to an allocation formula based on Plaintiff's Counsel's assessment of their potential damages. The Net Settlement Fund is $27,574.94. The settlement will pay each individual from the Net Settlement Fund an average gross amount of $237.72.

6. **Service Award**

Under the Settlement Agreement, the parties seek Court approval for a service award payment of $1,000 in recognition of the Named Plaintiff's service on behalf of all settlement participants. The Named Plaintiff assisted Counsel in the investigation of the claims at issue, participated in settlement discussions, and provided vital assistance that helped Plaintiffs' counsel achieve this settlement for the benefit of the greater group.

7. **Attorney Fees and Costs**

Under the Settlement Agreement, subject to Court approval, Plaintiff's Counsel will receive $25,000, inclusive of out-of-pocket costs.

## ARGUMENT

The claims settled involved a *bona fide* dispute over FLSA provisions, *i.e.*, the alleged failure to properly include renumeration when calculating overtime rates.

Collective actions under the FLSA Section 216(b) are fundamentally different than class actions raised under Fed. R. Civ. P. 23. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013).[3] The due process concerns present in class action litigation are not present in collective actions brought under the FLSA because there are no absent class members who will be bound to a release of their claims. *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 L 2344949, at *1 (N.D. Ill. May 15, 2015). Instead, only eligible settlement participants who *affirmatively elect* to participate in the settlement release claims against the defendants. Nor is a second-step fairness hearing required for FLSA Settlements. Bloomberg BNA, The Fair Labor Standards Act, Ch. 18.VI.A.1, p. 35. (4th ed. 2020) ("A collective action settlement may be brought to the court on a single motion to approve the settlement and enter a stipulated judgment."); *Moore v. Ackerman Inv. Co.*, No. C 07-3058, 2009 WL 2848858, at *2 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b).").

Here, the parties' settlement should be approved because it is "a fair and reasonable resolution of a bona fide dispute." *Lynn Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F. 2d 1350, 1354-55 (11th Cir. 1982). When the parties' settlement "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages[] that are actually in dispute" approval of the settlement will "promote the policy of encouraging settlement of litigation." *Id*. at 1354. There is a "strong presumption" in favor of approval. *Hamilton v. Frito-Lay, Inc.*, 2007

---

[3] While the Complaint asserted a hybrid action comprising both a Rule 23 class action claims (for the Virginia law claim) and an FLSA collective action under Section 216(b) (covering both Virginia and North Carolina employees), the case is resolving consistent with 29 U.S.C. § 216(b) and Va. Code § 40.1-29, as an "opt-in" collective settlement. Defendants dispute Plaintiff's assertion that the Virginia law claims in the Complaint can be brought under Rule 23.

6

WL 328792, at *2 (M.D. Fla. Jan. 8, 2007), *report and recommendation adopted*, 2007 WL 219981 (M.D. Fla. Jan. 26, 2007).

Settlement of a FLSA lawsuit must be approved by either a district court or the U.S. Department of Labor. *See Lomascolo v. Parsons Brinckerhoff, Inc.*, Case No. 1:08cv1310, 2009 WL 3094955, at *8 (E.D. Va. Sept. 28, 2009) (citing *Lynn's Food Stores,* at 1350). In this Circuit, a FLSA settlement will be approved when the Court determines that the settlement "is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Id*. In evaluating the fairness of settlements under the FLSA, courts rely on six factors: (1) the extent of discovery that has taken place, (2) the state of proceedings, including the complexity, expense, and likely duration of the litigation, (3) the absence of fraud or collusion in the settlement, (4) the experience of Plaintiffs' counsel, (5) the probability of Plaintiffs' success on the merits, and (6) the amount of the settlement in relation to the potential recovery. *See Devine v. City of Hampton, Virginia*, Case No. 4:14cv81, 2015 WL 10793424at *2 (E.D. Va. Dec. 1, 2015) (citing *Patel v. Barot*, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014)).

The proposed settlement is fair and reasonable. The settlement represents a good-faith compromise of the parties' *bona fide* dispute of liability and damages under the FLSA. The settlement was reached after arms-length negotiations between experienced wage and hour counsel. The parties request that the Court approve the settlement.

A.     Existence of *Bona Fide* Dispute

To merit approval, the settlement must resolve a *bona fide* dispute over FLSA provisions. *See Lynn's Food Stores*, 679 F.2d at 1355. Plaintiff alleges that his employers knowingly and/or recklessly failed to include all required renumeration when calculating employees' overtime rates. Thus, Plaintiff contends these employees are owed overtime under the FLSA and state law and that the Defendants willfully violated the FLSA and state law. Defendants deny the allegations in

the lawsuit. The Settlement Agreement contains a provision denying any and all wrongdoing and liability. The settlement represents a good-faith compromise of the parties' *bona fide* dispute regarding the FLSA allegations and claims contained in the Complaint.

B.      The Extent of Discovery

Substantial informal discovery was exchanged in this proceeding, with PLF providing time and pay data necessary for Plaintiff to prepare a damages model, and Plaintiff providing the damages model using that data. It was this informal discovery that allowed the Plaintiffs to assess the value of the claims in the case and to construct a damages model, which while time consuming, was integral to Plaintiffs' counsel's ability to assess best and worst day outcomes. Similarly, this discovery also allowed the Defendants to fully understand their potential exposure in the event of an adverse verdict. Had the lawsuit continued, there would have been considerable additional discovery in the form of depositions. Fortunately, the parties were able to avoid such time and expense through this settlement.

C.      The State of Proceedings

This litigation has been ongoing since July of 2024. As summarized above, it involves allegations of unpaid overtime under the FLSA and/or Virginia state law. The key allegations relate to PLFs alleged failure to include all renumeration in its overtime rate calculations. There are myriad issues that would have required significant litigation had the matter not settled. Such issues include, but are not limited to, the ongoing (in)validity of PLF's practices with respect to overtime rate calculations, whether PLF and PAN were joint employers, Defendants' knowledge or lack thereof of whether PLF's policies complied with the FLSA and/or state law, whether any violations were willful or knowing, as well as Defendants' affirmative defenses. Moreover, Plaintiffs likely would have moved for notice under the FLSA and for Rule 23 certification of their state law claims and Defendants would have challenged those efforts.

If the litigation had progressed, it would have been complex, expensive, and protracted. The parties would likely have had disputes through factual discovery and eventually challenged one another in briefing as to both liability and damages. Moreover, either side may have appealed any key judgment. Settlement provides significant monetary relief to potential plaintiffs now rather than the risk of an uncertain and unpromised resolution of contested issues. Settlement further provides the Defendants with peace of mind and certainty as to exposure resulting from Plaintiffs' allegations. Given the state of the proceedings, including the complexity, expense, and likely duration of the litigation, the proposed settlement of claims is fair and reasonable.

D.   Absence of Fraud or Collusion

The parties zealously advocated their competing interests throughout the litigation, including during settlement negotiations. The parties believe that there was no opportunity for fraud or collusion.

E.   Experience of Plaintiffs' Counsel in Wage and Hour Litigation.

Plaintiffs' counsel are well-respected lawyers with a breadth of experience in the field of wage and hour law. They have litigated a number of small and large overtime cases against public entities and private corporations, including, but not limited to:

> *Bonsall et al. v. Great Eastern Resort Corporation* Civil Action No. CL06-00600 (Circuit Ct. Rockingham County, VA)
> *Kisamore et al. v. Great Eastern Resort Corporation* Civil Action No. 3:10cv00009-nkm (WDVA)
> *McVicker et al. v. Recreational Resorts, LTD.* Civil Action No. 3:10-CV-00039 (WDVA)
> *Addisson et al. v. Mclaughlin Communications, Inc.* Civil Action No. 5:09-CV-00087 (WDVA)
> *Harris et al. v. Kerkim et al.* Civil Action No. 3:10-cv-00799 (EDVA)
> *Rogers et al. v. City of Richmond, Virginia* Civil Action No. 3:11cv620 (EDVA)
> *Davenport et al. v City of Richmond, Virginia* Civil Action No. 3:12cv710 (EDVA)
> *Carroll et al. v. County of Henrico, Virginia* Civil Action No. 3:12cv00105 (EDVA)
> *Washington et al. v. Sheriff's Office of the City of Richmond et al.* Civil Action No. 3:11-cv-00725 (EDVA)
> *Bryner v. Sheriff's Office of the County of Spotsylvania, Virginia et al.* Civil Action No.: 3:13-cv-00034 (EDVA)

9

*Lacroix et al., v. City of Portsmouth, Virginia*, Civil Action No. 2:13cv533 (EDVA)
*Devine et al. v. City of Hampton, Virginia*. Civil Action No. 4:14cv81 (EDVA)
*Lorenzo v. Prime Communications, L.P.* Civil Action No. 5:12-cv-69 (EDNC)
*Clinton et al. v. GEICO*. Civil Action No. 2:16-cv-00430 (EDVA)
*Robinson v. Jumpstart Consultants*. Civil Action No. 3:18-cv-487 (EDVA)
*Greene et al., v. United States Postal Service*. Civil Action No. 3:17-cv-26 (EDVA)
*Slavin et al, v. United States Postal Service*. Civil Action No. 3:17-cv-00134 (EDVA)
*Hall et al. v. Dominion Energy et al.* Civil Action No. 3:18-cv-00321 (EDVA)
*Hall et al. v. Rev1 Power Services, Inc.* Civil Action No. 3:18-cv-314 (EDVA)
*Wright, et al. v. City of Roanoke*. Civil Action No. 7:18-cv-210 (WDVA)
*Milton, et al. v. Quality Eco Technologies, LLC*. Civil Action No. 3:20-cv-43 (EDVA)
*Yerby, et al. v. City of Richmond*. Civil Action No. 3:19-cv-393 (EDVA)
*Clinton, et al. v. GEICO*. Civil Action No. 2:16-cv-430 (EDVA)
*Mendoza, et al. v. Baird Drywall & Acoustic, Inc.,* 7:19-cv-00882 (WDVA)
*Pinon, et al. v. Kalyan Hospitality, LLC, et al.*, 7:20cv205 (WDVA)
*Campbell, et al. v. Intercontinental Capital Group, Inc.*, 3:22-cv-00034 (EDVA)
*Granderson, et al. v. Capital One Financial Corporation,* 3:21-800 (EDVA)
*Denson, et al. v Elephant Insurance Services, LLC,* 3:22-cv-00022 (EDVA)
*Cephas, et al. v. City of Richmond*, 3:15cv332 (EDVA)
*Campbell, et al. v. Capital Center, LLC*, 3:20-cv-00694 (EDVA)
*Goode v. Better Homes Coalition*, 3:20-cv-00116 (EDVA)
*Payne v. Echohill Enterprises*, 5:19-cv-00059 (WDVA)
*Riggs v. Barns at Woodbourne*, 3:19-cv-00064 (WDVA)

F.  Probability of Plaintiffs' Success on the Merits and the Amount of Settlement in Relation to the Potential Recovery

   i.  Plaintiffs' Recovery

The Settlement has the effect of (1) providing monetary relief to Settlement Collective Members who choose to opt into the Action, (2) in exchange for an appropriate narrow and limited release of the overtime rate claims at issue, and (3) eliminating the inherent risks both sides would bear if this collective action litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the Settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d 1350 at 1354 (recognizing that courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness).

The Settlement compensates individuals who choose to participate in the Settlement and

10

eliminates the possibility of a loss on summary judgment, loss at trial, or loss on appeal. Consequently, this settlement brings value and certainty now, as opposed to years from now. The substantial benefit that settlement participants will immediately receive is a significant factor weighing in favor of approval of the proposed Settlement. The estimated settlement amounts vary widely, but eligible participating individuals will receive settlements that average $237.72. This amount represents approximately 100% of Plaintiff's counsel's calculation of the "best day" damages under the FLSA on the claims at issue in the case, including liquidated damages and a three-year lookback, plus for eligible individuals (who worked between July 1, 2021 and June 30, 2022) an additional amount representing a compromise over the parties' interpretation of a prior version of Virginia state law. Even if Plaintiffs had prevailed at trial on liability, they may have lost on "good faith" and "willfulness," which would have impacted the relevant limitations period and the availability of liquidated damages under the FLSA.

Under any theory, potential plaintiffs are receiving a significant settlement given the elimination of risk of a bad litigation result.

    ii.    <u>Plaintiffs' Attorneys' Fees and Costs</u>

The FLSA provides in part that "the court shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by defendant, and costs of the action." 29 U.S.C. § 216(b). The settlement agreed to by the parties reflects this and rather than engaging in a time consuming and costly fee fight over the amount of attorneys' fees, the parties here were able to reach a resolution of the claim for attorneys' fees and costs.

The FLSA "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interests taints the amount the wronged employee recovers under a settlement agreement." *See Poulin v. General Dynamics Shared Res., Inc.*, 2010 U.S. Dist. LEXIS 47511 *4 (W.D. Va. May 5, 2010) (quoting *Silva v.

11

*Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)). When assessing the fairness of attorneys' fees pursuant to a court-ordered fee award, courts generally rely on the lodestar analysis. *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992). However, assessing the fairness of attorneys' fees that are part of a negotiated FLSA settlement is not identical to the traditional lodestar analysis. *See Devine v. City of Hampton*, 2015 WL 10793424 at *3 (E.D. Va. Dec. 1, 2015). In determining the reasonableness of attorneys' fees in an FLSA settlement, courts should give some deference to the parties' voluntary agreement and use lodestar principals as a cross-check to assess fairness. *Id*.

Here, the parties negotiated that Plaintiff's Counsel's attorneys' fees and costs would be set at $25,000, which as explained below is less than the current lodestar calculated by Plaintiffs' counsel.[4]

Plaintiffs' counsel calculates their total current lodestar as of 5/6/25 is listed below.

| Name | Firm | Hours | Rates | Fees | Costs | Total |
|---|---|---|---|---|---|---|
| Antell Zev | Butler Curwood | 12.4 | 495-525 | 6,411.00 | 405 | 6,816.00 |
| Paralegal | Butler Curwood | 3.5 | 150 | 525.00 | | 525.00 |
| Coffield Tim | Coffield | 39.51 | 440-510 | 18,771.00 | 110 | 18,881.00 |
| Total | | | | | | 26,222.00 |

Plaintiff's Counsel's attorneys' fees are part of the bargained-for settlement. This is the same agreement that has been presented to the Court for approval. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have

---

[4] Plaintiff understands that in agreeing as part of the parties' settlement not to oppose this motion, Defendants do not endorse Plaintiff's Counsel's lodestar calculation and do not take any position regarding the reasonableness of the hours, rates, or costs reflected therein.

12

not agreed."); *Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (holding, at least in a class action context, "the court cannot modify the bargained-for terms of the settlement agreement"); *In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 944 (E.D. La. 2012) ("[T]he Court is not authorized to insist upon changes that, in its judgment, might lead to a superior settlement."), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), *reh'g en banc denied sub nom. In re Deepwater Horizon— Appeals of the Economic and Property Damage Class Action Settlement*, 756 F.3d 320 (5th Cir. 2014), *cert. denied sub nom. BP Exploration & Prod, Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S.Ct. 754 (2014); *Blanchard v. Forrest*, CIV. A. 93-3780, 1996 WL 28526 (E.D. La. Jan. 23, 1996) (overruling the magistrate's modification to consent judgment because courts lack authority to modify a settlement agreement).

"[A]ny process of judicial review and approval of stipulated attorneys' fees in the event of a settlement of civil rights litigation is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775 (8th Cir. 2018) (reversing district court's reduction of attorney fees from the agreed-upon settlement amount in an FLSA action). Additionally, Counsel's fee is reasonable in light of the fact that Plaintiff's fee agreements grant Counsel a 40% interest in the gross amount recovered.[5] Plaintiff avers that the requested fee thus approximates "the market price for legal services." *See Sutton v. Bernard,* 504 F.3d 688, 692, 693-94 (7th Cir. 2007).

Last, Plaintiff's Counsel believe that the requested fee is warranted in light of the results obtained for the members of the collective. "The result achieved by the attorneys for the class is

---

[5] Additionally, Plaintiff's Counsel expects to incur additional fees through the notice and administration period as they respond to the needs of the settlement administrator and settlement collective members. Plaintiff's current fee records or summary of same can be made available to the Court for *in camera* review should the Court wish to review them. Plaintiff can likewise submit declarations supporting their rates and experience if the Court requires.

13

often cited as one of the most significant factors in determining the reasonableness of a fee award." *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 761 (S.D.W. Va. 2009).  As explained herein, here Plaintiffs' counsel believe they have achieved a result for Settlement Collective Members that counsel believes is outstanding.  Especially inasmuch as Defendants would have vigorously disputed that overtime was owed, would have disputed the appropriateness of liquidated damages, would have disputed the application of a three-year limitations period, would have disputed that a collective and/or class action was appropriate or could be maintained through trial, and that PAN could have liability in this matter as a joint employer.

Here, based on the foregoing, Plaintiff believes the fees sought by Plaintiffs' counsel are reasonable.

G. Date of Court's Order

The Class Action Fairness Act ("CAFA") requires that, in order for a *class action* settlement agreement to be binding on class members, "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement…."  28 U.S.C. § 1715(b) & (e).  CAFA defines a "class action" as "any civil action ***filed*** in a district court of the United States ***under*** rule 23 of the Federal Rules of Civil Procedure…."  29 U.S.C. § 1711(1) (emphasis added).  An order giving final approval of a proposed settlement under CAFA may not be issued earlier than 90 days after the appropriate government officials are served with the CAFA notice of the settlement, *see* 28 U.S.C. § 1715(d)—or 100 days after a proposed settlement is presented to the Court, presuming that the defendants take the full 10 days to issue the required CAFA notice.

14

The complaint filed by Plaintiff purported to bring his state law claims on a class basis pursuant to Federal Rule of Civil Procedure 23. Accordingly, while the Parties are settling this action as an opt-in collective action, out of an abundance of caution, at the request of Defendants the Parties' settlement agreement provides Plaintiff's approval motion would "request that the Court not enter an order granting approval to the settlement … fewer than 100 days after the Agreement is presented to the Court," to permit Defendants to issue notice under CAFA. (Agreement, ¶ 2.) It further confirmed that this is "a material term of this settlement and Agreement." (*Id*.)

While Plaintiff does not agree with Defendant's position with respect to CAFA's application to this settlement, Plaintiff agreed to the 100-day provision as a condition of the settlement. Accordingly, Plaintiff asks that the Court's order approving the settlement not be entered until September 6, 2025, which is 100 days after this motion is filed.

## CONCLUSION

Wherefore Plaintiff requests that the Court approve the settlement and enter the Proposed Order provided as an attachment to the Motion to Approve Settlement on or after September 6, 2025.

Respectfully submitted,

  */s/ Timothy L. Coffield*
 Timothy L. Coffield (VSB # 83430)
 COFFIELD PLC
 106-F Melbourne Park Circle
 Charlottesville, VA  22901
 Tel: 434.218.3133
 Fax: 434.321.1636
 tc@coffieldlaw.com

 *Counsel for Plaintiff, Loje Witcher*

15

27312\0014\12610006v2

   */s/ Zev H, Antell*
Craig J. Curwood (VSB # 43975)
Zev H. Antell (VSB # 74634)
Samantha R. Galina (VSB # 96981)
BUTLER CURWOOD, PLC
140 Virginia Street, Suite 302
Richmond, VA  23219
Tel: 804.648.4848
Fax: 804.237.0413
craig@butlercurwood.com
zev@butlercurwood.com
samantha@butlercurwood.com

*Counsel for Plaintiff, Loje Witcher*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2025 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then provide a notice of electronic filing (NEF) to all counsel of record.

/s/Timothy Coffield